# Levi Bird Duff, Assignee of A. F. Baum, Appt., *v.* A. C. Hopkins, Assignee, et al.

Royalty payable under a mining lease is not rent, but part of the corpus of the estate.

The owner of a tract of land has the right to remove and convert into money for his own use the timber growing upon the surface and the minerals underlying it; but, if he has lien creditors, they have the right to object to the commission of waste to the prejudice of their liens, and at their instance the owner will be restrained in the exercise of the rights and powers of an owner.

A writ of estrepement, issued at the instance of any person who is in a position to object to the commission of waste, is a protection to all persons so situated.

If, by the appointment of a receiver the royalty is brought into court for distribution, all persons having a right to stay waste may present their claims upon the fund in the same manner and with the same effect as though all had joined in the application for the writ of estrepement.

A tenant in common procured a writ of estrepement to stop the removal of coal under a mining lease executed by a cotenant. Upon the dissolution of the writ and appointment of a receiver to collect the royalty from the lessee the share of the cotenant was claimed both by a prior mortgagee and by the cotenant's assignee in bankruptcy. *Held,* that the mortgagee was first entitled to be paid.

(Argued April 20, 1888.   Decided May 21, 1888.)

July Term, 1888, No. 21, E. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, CLARK, and WILLIAMS, JJ.   Certiorari sur appeal from a judgment of the Common Pleas of Clearfield County distributing a fund in the hands of a receiver.   Affirmed.

The facts are stated in the opinion.

*McEnally & McCurdy,* for appellant.—A mortgagor may sell in the usual way the lumber, coal, fire wood, ore, fruit, or grain found or growing on the land without violating the rights of the mortgagee until the mortgagee stops him by ejectment or estrepement; for those things are usually intended for consumption and sale, and the sale of them is the usual means of raising the money to pay the mortgage.   Hoskin v. Woodward, 45 Pa. 44; Angier v. Agnew, 98 Pa. 587, 42 Am. Rep. 624.

The mortgagee has no more than a lien.   Witmer's Appeal, 45 Pa. 463, 84 Am. Dec. 505; Asay v. Hoover, 5 Pa. 35, 45 Am. Dec. 713; Rickert v. Madeira, 1 Rawle, 328; Edmonson v. Nichols, 22 Pa. 79; Wilson v. Shoenberger, 31 Pa. 299; Talbot's Appeal, 2 Chester Co. Rep. 413; Michener v. Cavender, 38 Pa. 338, 80 Am. Dec. 486.

If the mortgagee is dissatisfied, he may protect himself by ejectment, or by scire facias upon the mortgage, or by estrepement (act of March 19, 1822, Purdon's Digest, 1701); or, in case of emergency, by bill in equity and injunction.   But, until he uses the means which the law provides, the rights of the mortgagor remain unchanged, and he continues to be the owner of all profits derived from the use of the land, including the mining of coal and cutting of timber.

In the present case, the ejectment being simply a suit between the tenants in common, in regard to their title and rights in said land, the proceedings of the court were in reference to them and their rights, and are to be so construed. The rights of outside persons were not affected.

*Orvis & Snyder* and *Murray & Gordon,* for appellees.—The royalty in court is not a rent, but a part of the corpus of the estate. It is not an annual profit. Lynn's Appeal, 31 Pa. 44, 72 Am. Dec. 721; Griffin v. Fellows, 81* Pa. 114; Caldwell v. Fulton, 31 Pa. 475, 72 Am. Dec. 760; Funk v. Haldeman, 53 Pa. 229, 241.

This property was taken not in the usual and ordinary way, but wrongfully, and by a party who confessedly could not take it except by virtue of the special order of the court.

The proceeding and order of the court were based upon a wrongful taking.

When the estrepement was dissolved and the estate permitted to be converted into money, and the court directed, by its order of April 4, 1882, that "the receiver hold said moneys until it shall be legally determined to whom said money shall belong," the rights of all parties in the estate, whatever they were, continued and were preserved. Belchier v. Butler, 1 Eden, 530; Astor v. Miller, 2 Paige, 68; Jones, Mortg. 3d ed. § 708.

Until stopped by ejectment and estrepement, as here, the mortgagor may sell coal, etc., because it is the usual way of raising money to pay the mortgage. But when stopped, the property, or, as here, its proceeds, are preserved for the rights of all parties interested; but that was a mine opened before date of mortgage. Hoskin v. Woodward, 45 Pa. 44; Martin v. Ambler, 6 Sad. Rep. 312; Gill v. Weston, 110 Pa. 312, 1 Atl. 921.

The purpose of an estrepement or injunction is to prevent the property getting out of reach. It is when and because the property is gone on which alone he has a lien, that he cannot assert his right; where the property is still on hand, as here, he can.

There is a distinction between the ordinary use of property, and the taking of a part of the property which amounts to waste (Hoskin v. Woodward, 45 Pa. 44); but this, of course, must be understood to refer to mines opened at the date of the mortgage; and waste is restrainable independently of the statute, by either mortgage or judgment creditors. Witmer's Appeal, 45 Pa. 463, 84 Am. Dec. 505.

If the thing in dispute is part of the land, or the proceeds of land, so converted as to amount to injurious waste, the right of the mortgagee exists; and this right arises not by virtue of execution or other process, but by virtue of the lien created by the law, and directly connecting the mortgagee with the mortgagor's land.

When the proceeds of real estate, arising by judicial sale, are for distribution, the lien creditor comes in on the fund, not by virtue of a writ or process, but by virtue of his lien and the connection between himself and the land which the law has established and because the fund in court represents that land to which his lien attached.

Damages awarded to a mortgagor for land taken for a right of way, or other public improvement, become a substitute for the premises taken, and the mortgage is a specific lien upon the fund; as, also, do damages awarded by the state for an injury done to the property by the abandonment of a canal, equitably belong to the holder of a mortgage. The sum awarded arises from or grows out of the land, by reason of the injury which has diminished its value. In equity it is the land itself. It takes the place of the reduced value of the land. Bank of Auburn v. Roberts, 44 N. Y. 192; Jones, Mortg. § 706.

If the land be charged with the payment of legacies or subject to other liens, the owner is a trustee for all who are interested, whose rights the court will protect. Reese v. Addams, 16 Serg. & R. 40; Pennsylvania R. Co. v. Jones. 50 Pa. 417.

Where lands are sold under a judgment against a residuary devisee, pecuniary legacies charged thereon are payable out of the proceeds of sale. Nichols v. Postlethwaite, 2 Dall. 131, 1 L. ed. 319; Ruston v. Ruston, 2 Dall. 243, 1 L. ed. 365, 1 Am. Dec. 283; Witman v. Norton, 6 Binn. 395; Hassenclever v. Tucker, 2 Binn. 525; Clifton v. Hassenclever, 3 Yeates, 294; Tucker v. Hassenclever, 3 Yeates, 294; Diller v. Young, 2 Yeates, 261.

The owner of land is the party entitled to recover damages for the taking; but it is the duty of the court to protect the rights of the mortgagees and other lien creditors. Keller's Appeal, 29 Pittsb. L. J. 316; Ames's Appeal, MS. opinion, filed March 3, 1884. Per Curiam.

The law regards the removal of a part of mortgaged premises, or a diminution thereof, as a fraud upon the mortgagee, and

permits him to follow the property and assert his right thereto as against the wrongdoer. Gill v. Weston, 110 Pa. 317, 1 Atl. 921.

OPINION BY MR. JUSTICE WILLIAMS:

The title to tract No. 2009, prior to 1878, was in several tenants in common, among whom were A. F. Baum and R. P. Montgomery. On the 1st of May, 1878, they undertook for themselves and their cotenants to lease the tract to the Sandy Lick Coal & Coke Company, for mining purposes, giving to the company the exclusive right to mine all the coal therein at an agreed rate or royalty per ton. In 1882, some of the part owners, not recognizing the right of Baum and Montgomery to represent them, brought an action of ejectment against the coal company, and in order to stop the removal of the coal caused a writ of estrepement to issue. This writ was subsequently dissolved by the court, and an order was made appointing a receiver and directing the payment of all royalties to him for distribution by the court to the parties entitled. The company resumed mining and paid the royalty to the receivers. The court has distributed the fund to those entitled, except the sum now in court which represents the interest of Baum. Since the lease was made he has become a bankrupt and his assignee in bankruptcy claims the money. Hopkins is the holder of a mortgage made prior to the execution of the lease and he claims it upon his mortgage. The question is, To which of these claimants should the money be awarded? The first point to be determined is, What does the fund represent? The instrument under whose provisions it has been paid is called a lease, but the royalties to be paid under it have none of the qualities of rent. They certainly are the price of the coal in place. They are not paid for the use of the tract by a tenant, but for the price of the chief article of value in it by a purchaser. Every ton of coal mined reduces the tract in value, and when the mines upon it are exhausted the security for the mortgage debt is also exhausted. That royalties are part of the corpus of the estate and not a profit issuing out of it was held in Caldwell v. Fulton, 31 Pa. 475, 72 Am. Dec. 760. See also Sanderson v. Scranton, 105 Pa. 469.

The owner of a tract of land has the right to remove and convert into money for his own use the timber growing upon the

surface and the minerals underlying it; but, if he has lien creditors, they have the right to object to the commission of waste to the prejudice of their liens, and at their instance the owner will be restrained in the exercise of the rights and powers of an owner. Until the machinery of the court was set in motion to arrest the commission of waste, Baum had the right to the price of the coal; but when waste was enjoined and the estrepement was subsequently dissolved under an order directing the money to be paid into court for distribution to the parties entitled, his right as an owner was suspended and the court held the fund in lieu of the coal for the benefit of those who were entitled to it.

It is not an answer to this proposition to call attention to the fact that the estrepement was not issued at the instance of the mortgagee. When issued at the instance of any person who is in a position to object to the commission of waste, it is a protection to all persons so situated; and when the court by the appointment of a receiver brought the funds of the coal into court for distribution, the method of distribution could not depend upon the result of an inquiry as to what part owner, mortgagee, or other person caused the writ to issue. All part owners and all other persons having a right to stay waste may present their claims upon the fund in the same manner and with the same effect as though all had joined in the application for the writ of estrepement.

When the commission of waste was stopped by the writ, the right of the owner to receive the proceeds of the waste was suspended; and neither he nor his assignee in bankruptcy has any claim upon the fund until the mortgagee is first paid. Judgment affirmed.